[Civ. No. 1924. First Appellate District.—October 19, 1916.]

AUGUSTA VRAGNIZAN, Respondent, v. SAVINGS UNION BANK AND TRUST COMPANY (a Corporation), as Executor, etc., Appellant.

ACTIONS—ABATEMENT AND SURVIVAL OF CAUSES OF ACTIONS—TORTS.— An action arising out of a tort, unconnected with contract and which affects -the person only and not the estate, is purely personal, and abates with the death of the wrongdoer, while an action virtually founded upon contract, though nominally in tort, survives against the tort-feasor's legal representatives.

ID.—HUSBAND AND WIFE—SETTLEMENT OF PROPERTY RIGHTS—RECOVERY OF CONCEALED PROPERTY—ACTION NOT ABATED UPON DEATH.—An action to recover one-half of the value of certain property concealed by a husband from his wife upon the settlement of their property rights during the pendency of an action for divorce, is in the nature of an action for the recovery of an interest in property, and does not abate with the death of the husband.

ID.—MAINTENANCE OF ACTION—DECREE OF DIVORCE NOT A BAR.—The maintenance of such an action is not barred by the decree in the suit for divorce, where such decree dealt only with the status of the parties.

ID.—PLEADING—OFFICIAL CAPACITY OF EXECUTOR.—An allegation in the complaint that on a stated day letters testamentary were duly and regularly issued to the defendant executor, and that such defendant ever since has been and now is the duly qualified and acting executor of the will of the deceased husband, is a sufficient allegation of official capacity, in the absence of a special demurrer. Where such allegation is admitted in the answer, such admission has the effect of a stipulation of the fact, which renders the allegation of more specific facts unnecessary.

ID.—FALSE REPRESENTATIONS—STATEMENT IN DIVORCE PROCEEDINGS—
RIGHT OF ACTION NOT AFFECTED BY.—The fact that most of the
false representations made by the deceased upon which the plaintiff
relied were not made to her personally, but by the testimony of the
deceased and in affidavits filed by him in the action for divorce,
does not affect the right of the plaintiff to maintain the action.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.    Marcel E. Cerf, Judge.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro, and Felix T. Smith, for
Appellant.

Arthur H. Barendt, for Respondent.

KERRIGAN, J.—This is an action based on a claim pre-
sented against the estate of the decedent for approximately
six thousand dollars, of which sum the plaintiff alleges she was
defrauded in a settlement of property rights had between her-
self and the decedent during the pendency of a suit for divorce
in which they were the parties.    Plaintiff obtained judgment,
and the defendant appeals.

After the plaintiff and the decedent had been married and
living together as husband and wife for a period of about
thirty years, the decedent on September 11, 1908, culminated
a long course of cruel treatment of the plaintiff by threaten-
ing to kill her and by driving her and their children from
home.    The next day, in anticipation of a divorce proceeding
being brought against him by his wife, he withdrew from two
savings banks, where he had on deposit community funds to
the amount of ten thousand one hundred dollars, the sum of
six thousand dollars, and placed the same in a safe deposit
box which he rented that day.    A few days thereafter the
plaintiff commenced an action against decedent for divorce
on the ground of extreme cruelty.    In a counter-affidavit upon
a motion for counsel fees, costs, and alimony, as well as in his
verified answer to the plaintiff's complaint and by testimony
in open court, the decedent represented that the only money
he had was the four thousand one hundred dollars remaining
on deposit in the said savings banks.    He also represented in
his affidavit, answer, and oral testimony that a partnership,

in which he had been theretofore interested, had been dissolved and that he was no longer interested in that business, whereas it was admitted at the trial of the present action that such representations were untrue, and that in fact his partnership in such business continued to the time of his death, and it was also stipulated by the parties to this action that during all the time between the commencement of said proceeding in divorce, and his decease, he was in receipt from the partnership of a net income of forty dollars per month.   On the twelfth day of April, 1909, the plaintiff, believing the representations of the decedent, entered into an agreement of settlement of their property rights with him, under the terms of which they divided equally all the money which he had on deposit at the time in the savings banks above mentioned, viz., four thousand one hundred dollars.   At about three months after the making of this contract the decedent redeposited the six thousand dollars with an additional nine hundred dollars in the banks from which the six thousand dollars had been withdrawn.   The decedent by the terms of his will left five dollars to each of his two children.   He was of a secretive nature, and consequently the plaintiff knew little concerning his business affairs.   Plaintiff herself is unable to read or write the English language, and for years has suffered from an incurable deafness.   In her complaint, among other things, she alleges that she was induced to enter into the agreement of settlement by the fraudulent misrepresentations of the decedent; that she did not learn the falsity of his representations until shortly after his death; that if she had known the facts with reference to the property owned by the decedent at the time of the agreement she would not have accepted the property delivered to her in settlement of her property rights.   In her prayer she asks judgment for one-half of the value of the property concealed from her by decedent.

In support of the appeal the defendant claims that this is an action based on fraud and deceit, and that therefore it abated with the death of the decedent.   It is sometimes said that at common law all causes of action *ex contractu* survive, whereas all those based on tort die with the person.   But neither of these statements is strictly accurate.   As to the former, for example, a breach of promise of marriage is an action arising *ex contractu,* yet it does not survive.   Nor do all actions in tort die with the person.   The true test is not so

much the form of the action as the nature of the cause of action. When the action arises out of a tort, unconnected with contract, and which affects the person only and not the estate—such as assault and battery, false imprisonment, malicious prosecution, personal injuries—the action is purely personal and abates with the death of the wrongdoer. But when the action is virtually founded upon contract, though nominally in tort, it survives against the tort-feasor's legal representatives. (1 Cyc. 60; 1 C. J. 340, 362; 1 R. C. L. 22; *Lee* v. *Hill,* 87 Va. 497, [24 Am. St. Rep. 666, 12 S. E. 1052]; *Payne's Appeal,* 65 Conn. 397, [48 Am. St. Rep. 215, 33 L. R. A. 418, 32 Atl. 948].) And in the case of a tort resulting in the wrongful acquisition of personal property, the law imposing on the wrongdoer the duty of returning that property to the owner, the obligation at common law might be treated as *quasi* contractual, and the neglect to perform it a breach of such contract; in which case the damage resulting from the tort is substantially the value of the property, and the damage resulting from the breach of contract is measured substantially in the same way. Similarly, in determining the question of survival, at common law the substantial cause of action might properly be treated as founded in contract. (1 R. C. L. 24.)

In the present case it appearing from the allegations of the complaint that the plaintiff was entitled to a divorce from the decedent on the ground of extreme cruelty, she was entitled at the very least to one-half the community property (Civ. Code, sec. 146; *Gorman* v. *Gorman,* 134 Cal. 378, [66 Pac. 313]); and she settled with her husband apparently on the theory that she was receiving one-half of the community personal property, and that the agreement of settlement recognized this right. Later, and after his death, on discovering that she had been deceived as to the amount of money decedent had on hand at the time of the settlement, she promptly commenced this action to recover one-half of the property which decedent had thus concealed from her. Such an action is not purely a personal action for tort. It may be treated under the authorities as founded upon contract; and certainly it is in the nature of an action for the recovery of an interest in property. If one believes a false statement of another, and such false statement is the direct means of obtaining the property of such person, there is a legal injury to the rights

of property, and the owner has an action for the property or its value based on the fraud, and also in some jurisdictions on the implied contract to return the property or the proceeds thereof, which legally or equitably belong to the original owner. In the case at bar the plaintiff at the time of settlement was entitled to at least one-half of the community property, and if the divorce proceeding had included an adjudication of property rights the court could not have awarded her less (*Gorman* v. *Gorman, supra*), but believing a false statement of the decedent as to how much community property there was, and receiving by agreement with her husband one-half thereof, she took less than she would have been entitled to receive under an adjudication by the court. Accordingly it would appear that she has been injured in a right of property, and has an action to recover the amount of which she was defrauded.

In *Henderson* v. *Henshall*, 54 Fed. 320, [4 C. C. A. 357], the facts constituted an action for damages for false representations concerning real property, and to the contention that the cause of action did not survive the death of the plaintiff the court said: "There may be some question as to the survival of a thing in action arising out of a personal injury, but the thing in action in this case arises out of the violation of a right of property, which, by the express language of section 954 of the Civil Code of California, passes to the personal representatives of the deceased," for that section provides that "a thing in action arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner it passes to his personal representatives." And it necessarily follows that if the thing in action would pass to the legal representatives of plaintiff on her death, it would survive the death of the defendant. The court further said: "The wrong which was the subject of the action was not merely a personal injury inflicted upon the decedent, and the damages claimed the measure of her bodily or mental suffering; but the wrong was to the estate of the original plaintiff whereby it became diminished in value." Here the court quotes from Pomeroy's Remedies and Remedial Rights, section 147, as follows: "It is now the general American doctrine that all causes of action arising from torts to property, real or personal—injuries to the estate by which its value is diminished,—do survive and go to the adminis-

trator or executor as assets in his hands." In the case of *Fox* v. *Hale & Norcross S. M. Co.,* 108 Cal. 478, [41 Pac. 328], the defendants were charged with a conspiracy to defraud a mining company in which the plaintiff was a stockholder, and one of the defendants died after judgment against him but before the entry thereof; and on the subject of the abatement of the action with the death of that defendant the court said: "The right of the plaintiff to maintain the action against the executors of Hobart is fully recognized by section 1584 of the Code of Civil Procedure. (See, also, *Coleman* v. *Woodworth,* 28 Cal. 567.) It falls within the rule given by Lord Mansfield in *Hambly* v. *Troutt,* Cowp. 371: 'Where the property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor.' " See, also, *Shiels* v. *Nathan,* 12 Cal. App. 604, [108 Pac. 34], which is a case very similar in its facts to this case, except that there the contract of settlement itself expressly provided that the plaintiff should receive one-half of the community property, which provision of the contract having been broken it was held that an action for damages for the breach would lie.

Passing to the next question, it must be held, we think, that the decree in the suit for divorce of *Vragnizan* v. *Vragnizan* is not a bar to this action. The pleadings in that case placed in issue the question of the property rights of the parties, but thereafter the plaintiff and defendant, as the code permitted them, withdrew that question from the consideration of the court, and prior to the entry of the decree made the agreement upon which this action is founded. The plaintiff, therefore, is not estopped by the decree in the divorce proceeding from maintaining this action. That decree is final, it is true, as to every point which either expressly or by implication was in issue and the decision of which is essential to support the judgment; but the decree in this instance dealt only with the status of the parties; and certainly no decision with respect to their property rights was essential to sustain such a decree. (1 Freeman on Judgments, 465, 468; *Senter* v. *Senter,* 70 Cal. 619, 625, [11 Pac. 782]; *Coats* v. *Coats,* 160 Cal. 671, 679, [36 L. R. A. (N. S.) 844, 118 Pac. 441]; *Tabler* v. *Peverill,* 4 Cal. App. 671, 679, [88 Pac. 994]; *In re Burdick,* 112 Cal. 387, 397, [44 Pac. 734].)

Defendant complains that the allegation in the complaint that on the fifth day of June, 1913, letters testamentary were duly and regularly issued to the defendant executor, who has ever since and now is the duly qualified and acting executor of the will in the estate of said Vragnizan, deceased, is a mere conclusion of law, and that the complaint therefore must be held insufficient. We think this allegation of the official capacity of the defendant sufficient in the absence of a special demurrer. Moreover, the allegation is admitted in the answer, which is in effect a stipulation of the fact; and this rendered the allegation of more specific facts unnecessary. (*Collins* v. *O'Laverty,* 136 Cal. 31, [68 Pac. 327]. See, also, *San Francisco etc. Land Co.* v. *Hartung,* 138 Cal. 223, [71 Pac. 337].)

Defendant also contends that the complaint fails to show that the representations upon which the plaintiff relies were addressed to her, and therefore it is argued that they cannot be the basis of an action for deceit. In the main, the complaint depends upon statements made by the decedent, as before stated, in his oral testimony and in his affidavit and verified answer, and therefore were not made directly to her; but it is reasonable to assume that they were made with the intention of deceiving her, and she believing these representations, was induced thereby to make a settlement with the decedent for less than she otherwise would have accepted, and certainly for less than she was entitled to—the property being community property, and the decedent having treated her with extreme cruelty. Under these circumstances, how can it be successfully asserted that the representations upon which she acted were not addressed to her? However this may be, it is alleged in the complaint in so many words "that said decedent repeatedly communicated with plaintiff through their son, and urged her to make a settlement of their property rights, and stated that he had no other money save and except the sum of four thousand one hundred dollars in the two savings banks, and that if plaintiff would agree to make a settlement of their property rights he would give her one-half of said money, etc."

It is further argued that so far as the plaintiff depends upon affidavits and statements made by the decedent in court, they are privileged, and cannot be made the foundation of an action of deceit, and that it is not alleged in the complaint

that decedent, by his representations in the former action, intended to induce any action on the part of the plaintiff. It is further contended that nowhere is it alleged in the complaint that the testator had any reason to believe that the representations made by him were false. We think these and other points made by the defendant cannot be seriously urged, and it is not necessary to specifically discuss them.

For the reasons heretofore stated the judgment is affirmed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 18, 1916.